IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JIMMY BARCLAY | **I N D I C T M E N T**<br><br>Case No. _____<br><br>Violations:  21 U.S.C. § 846 and 18 U.S.C. § 1956(h) |

COUNT ONE

**Conspiracy to Possess with Intent to Distribute and
Distribute Controlled Substances**

The Grand Jury Charges:

From in or about 2022 through the date of this Indictment, in the Districts of North Dakota, Arizona, Southern District of Iowa, Minnesota, New Jersey, and elsewhere,

JIMMY BARCLAY

did knowingly and intentionally combine, conspire, confederate, and agree together and with those charged in <u>United States v. Frederick Delaney et al.</u>, Case No. 3:24-cr-00017 (D.N.D.), and others, both known and unknown to the grand jury, to possess with intent to distribute and distribute controlled substances, including 400 grams or more a mixture and substance containing a detectable amount of fentanyl (a/k/a "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide"), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and  841(b)(1)(A)(vi), and Title 18, United States Code, Section 2.

## OVERT ACTS

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1. It was a part of said conspiracy that one or more of the conspirators traveled between the states of Iowa, North Dakota, and elsewhere to obtain, transport, and distribute fentanyl;

2. It was further a part of said conspiracy that the defendants and others would and did distribute and possess with intent to distribute a mixture and substance containing a detectable amount of fentanyl, in the District of North Dakota and elsewhere;

3. It was further a part of said conspiracy that certain conspirators sought and located users of fentanyl to purchase controlled substances from other conspirators;

4. It was further a part of said conspiracy that certain conspirators sought and located sub-distributors of fentanyl for other conspirators;

5. It was further a part of said conspiracy that one or more conspirators possessed firearms to protect their supply of controlled substance, and to intimidate other persons in North Dakota and elsewhere,

6. It was further a part of said conspiracy that one or more conspirators received money wire transfers that were proceeds of fentanyl, cocaine, and methamphetamine sales;

7. It was further a part of said conspiracy that one or more conspirators sent money wire transfers that were proceeds of fentanyl, cocaine, and methamphetamine sales;

8. It was further a part of said conspiracy that one or more of the defendants traveled between the states of Arizona, North Dakota, and elsewhere via bus, automobile (including rental vehicles), airplane, and other means of transportation for purposes of obtaining and distributing controlled substances and of collecting and distributing proceeds of drug distribution activity;

9. It was further a part of said conspiracy that one or more conspirators rented and occupied apartments, trailer homes, houses, and hotel rooms in North Dakota, Arizona, and elsewhere from which to store, possess, and distribute fentanyl, cocaine, and methamphetamine;

10. It was further a part of said conspiracy that conspirators utilized residences in Fargo, North Dakota, and elsewhere to store, conceal, and distribute controlled substances, and to store and conceal the proceeds of drug trafficking conduct;

11. It was further a part of said conspiracy that one or more conspirators collected money from other persons to purchase fentanyl;

12. It was further a part of said conspiracy that one or more conspirators would and did attempt to conceal their activities;

13. It was further a part of said conspiracy that one or more conspirators would and did use United States currency in their drug transactions;

14. It was further a part of said conspiracy that one or more conspirators would and did use telecommunication facilities, including cellular telephones, to facilitate the distribution of fentanyl;

15. It was further a part of said conspiracy that one or more conspirators would and did use social media websites, including but not limited to Facebook, to facilitate the distribution of fentanyl;

In violation of Title 21, United States Code, Section 846, and <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946).

COUNT TWO

**Money Laundering Conspiracy**

The Grand Jury Further Charges:

From in or about 2022 through the date of this Indictment, in the Districts of North Dakota, Arizona, Southern District of Iowa, Minnesota, New Jersey, and elsewhere,

JIMMY BARCLAY

did knowingly and intentionally combine, conspire, confederate, and agree together and with those charged in United States v. Frederick Delaney et al., Case No. 3:24-cr-00017 (D.N.D.), and others to commit offenses against the United States, in violation of Title 18, United States Code, Section 1956(h), to wit: to knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that is, knowingly and intentionally distributing controlled substances: (a) with intent to promote the carrying on of the specified unlawful activity; and (b) knowing that the transaction is designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

MANNER AND MEANS

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

1.  JIMMY BARCLAY and co-conspirators acquired fentanyl, a Schedule II controlled substance, outside of the District of North Dakota, to include the District of

5

Arizona, for distribution. The fentanyl was thereafter transported through, and distributed in, the District of North Dakota and elsewhere during the time frame of the conspiracy;

2.    Members of the controlled substance distribution conspiracy organization would sell fentanyl, and currency would be collected and transferred from one person to another to continue the ongoing illegal activity; and

3.    During the course of this conspiracy, persons both known and unknown to the grand jury, utilized money transfer services, such as CashApp (Block, Inc.), Walmart-to-Walmart (RIA Financial), Western Union, and MoneyGram money services, to wire and transfer proceeds of the illegal drug sales from North Dakota to Michigan and elsewhere, with intent to disguise and conceal the nature, the location, the source, the ownership, and the control of the proceeds of the drug trafficking activity, and to promote and continue the distribution activity;

In violation of Title 18, United States Code, Section 1956(h).

A TRUE BILL:

/s/ Foreperson
Foreperson

/s/ Jennifer Klemetsrud Puhl
JENNIFER KLEMETSRUD PUHL
Acting United States Attorney

DMD/vt